IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIM E. MARTIN,

        Plaintiff,

                                     6:12-CV-2306-PK

                                     OPINION AND

v.                                 ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff Jim E. Martin filed this action December 20, 2012, seeking judicial review of the

Commissioner of Social Security's final decision denying his applications for disability insurance

benefits ("DIB") under Title II of the Social Security Act (the "Act"). This court has jurisdiction

over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

        Martin argues that by erroneously rejecting medical evidence and erroneously rejecting

Page 1 - OPINION AND ORDER

Martin's testimony regarding the extent of his impairments, the Commissioner failed properly to assess his residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for that reason failed to carry her burden at step five of the process. I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.

*See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141.  If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record.  *See* 20 C.F.R. § 404.1520(e).  The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis,[1] despite the limitations imposed by the

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR

LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the

claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §

404.1520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can

still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*,

482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant

is no longer capable of performing his or her past relevant work, the evaluation will proceed to

the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the

claimant's age, education, and work experience to determine whether the claimant can perform

any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142;

*see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the

Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs

existing in significant numbers in the national economy, the claimant is conclusively found not to

be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g),

404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to

meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§

404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied

proper legal standards and his or her findings are supported by substantial evidence in the record.

*See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## BACKGROUND

Martin was born April 28, 1971. Tr. 31, 113, 125.[2] He attended school through the eleventh grade, received a General Educational Development high school equivalency diploma in 1992, and has received no subsequent formal education or vocational training. Tr. 32-33, 136-143. According to the evidence of record, prior to his claimed disability onset date of March 1, 2009, Martin worked part-time as a fast-food cook in the summers of 1986 and 1987, worked full-time as a woodworker from January 1988 through May 2005, worked more than full time as

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

a tow-truck driver from April 1998 through May 2005, and worked more than full time as a cabinet builder from May 2005 through March 2009. Tr. 58, 115-124, 128-133, 138, 144-156, 157-164. Following his claimed disability onset date, from April 2009 through February 2011 Martin worked as a gas-station attendant, at first full-time for a period of a few weeks and subsequently part-time. Tr. 33-34, 48-53, 115-124, 128-133, 138, 144-156, 157-164.

The earliest medical record appearing in the administrative record is a letter opinion signed by Martin's treating physician Paul G. Curtin, M.D., on July 6, 2009 (more than four months after Martin's claimed disability onset date), stating, apparently for purposes of referral, that "Mr. Martin has advanced osteoarthritis of the hips." Tr. 213. On July 23, 2009, apparently also for purposes of referral, Dr. Curtin further wrote that:

> Mr. Martin has spent the last several years under my care for severe hip pain. If he were not of such a young age, he would have received a hip replacement by now, but orthopedics is delaying that until some number of years goes by. As a result of this he can no longer stand in one place and walk all day as he used to do as a cabinetmaker, and hence he has returned to school for further training.

Tr. 212. The administrative record contains no other medical records dating from prior to Martin's application for disability insurance benefits.

On September 15, 2009, Martin protectively filed an application for disability insurance benefits, claiming a disability onset date of March 1, 2009. Tr. 136-143, 113-114, 125-127. In connection with his application, Martin claimed to be disabled by arthritis of the hip and partial deafness. Tr. 136-143, 113-114, 125-127. Martin characterized the impairments caused by those conditions as follows:

> Arthritis in my hips limits my ability to walk without pain. Sitting for more than an hour in most cases causes pain as well, bending and stooping are at times almost impossible. Medications help but do not take all the pain away. [T]he deafness limits my hearing and makes people have to repeat themselves for me.

* * *

> Sitting is painful[], [s]tanding is painful, walking is painful, [l]ifting the proper
> way without using my back is impossible because my hips can[']t move properly
> to do the lifting, unable to hear instructions at times unable to hear some people
> because the the [sic] tones of their voice.  It is painful to walk, sit, bend, lift, even
> basic relaxation is uncomfortable.

Tr. 136-143.  Martin reported that his daily activities included making breakfast for his children

and getting them ready for school, performing minor household chores when possible in

consequence of his pain symptoms, collecting his children from school, feeding and caring for

his family's pets, and sometimes preparing dinner for himself and for his family.  Tr. 165-172.

Martin reported that he was unable to bend or squat, that he sometimes needed his children's help

to put on his socks and shoes, and that he was usually able to walk less than a quarter of a mile

before needing to rest.  Tr. 165-172.  Martin described the pain caused by his arthritis of the hips

as "aching to piercing" and as present when he walked, stood, sat, or bent.  Tr. 173.  Martin's

wife, Lisa, provided a report consistent with Martin's own self-report of his symptoms and

activities of daily living.  Tr. 174-181.  On October 19, 2009, Dr. Curtin's offices provided a

"Patient Health Summary" indicating that Martin's significant diagnoses were of asthma, reflux

esophagitis, and morbid obesity.  Tr. 214-216.

  On November 19, 2009, consultative examining physician DeWayde C. Perry, M.D.,

reported that Martin complained of bilateral hip arthritis, recording that:

> The claimant's hip pain began gradually in 2005 in his right hip, but eventually the
> pain was felt in both hips.  His pain is nearly constant, increased by walking more
> than thirty minutes, cold weather, cold water, squatting or bending.  His pain is
> decreased by using prescription medications.  He has had x-ray examinations
> performed of his hips, but he has not undergone any therapeutic intervention, such
> as cortisone injections or otherwise.

Tr. 221-225.  Dr. Perry observed that Martin "d[id]  not have difficulty getting on or off the

examination table." Tr. 221-225. Regarding Martin's hip flexibility, Dr. Perry reported that

Martin was capable of "[B]ackward extension 30 degrees bilaterally. Flexion (knee flexed) 80

degrees, flexion (knee extended) 80 degrees bilaterally with bilateral hip pain associated with

movement. Adduction 20 degrees bilaterally, abduction 40 degrees bilaterally." Tr. 221-225.

Dr. Perry further observed that "claimant had tenderness to palpation at the left greater

trochanter. There was no crepitus or effusions noted. He also exhibited severe pain with

minimal internal and external rotation of the bilateral hips." Tr. 221-225. Dr. Perry opined that

Martin could stand and walk for up to four hours, that there was no limit on Martin's capacity to

sit, that Martin needed no assistive devices for purposes of locomotion, that Martin could carry

up to 20 pounds occasionally and 10 pounds frequently, that Martin should not climb, kneel,

crouch, or crawl, but could occasionally stoop, that Martin had no limitations in balance or

manipulation, and that Martin should avoid working at heights, around heavy machinery, or

under extremes of temperature. Tr. 221-225. An X-ray study of Martin's left hip dated the same

day as Dr. Perry's examination indicated "[m]ild degenerative change," with the femoral head

"well positioned within the acetabulum," no fractures, and "some degree of osteopphyosis

involving the superior acetabulum." Tr. 226.

     Largely on the basis of Perry's examination and opinion, on December 10, 2009, the

Administration determined that Martin's health condition caused pain, fatigue, weakness,

shortness of breath, and other symptoms, Tr. 185-186, and that Martin was capable of light

exertional work with appropriate postural and environmental limitations, Tr. 182-184. The

Administration further determined that Martin could therefore perform a narrow range of light

work, including jobs such as "eyeglass frame polisher, paper & pulp weight tester, and glove &

mitten puller through." Tr. 182-184.

On December 18, 2009, Administration consulting physician Richard Alley, M.D., assessed Martin's physical residual functional capacity, opining that Martin's primary diagnosis was of morbid obesity, and that his secondary diagnosis was of degenerative joint disease of the bilateral hips. Tr. 227-234. Dr. Alley opined that Martin could carry up to 20 pounds occasionally and 10 pounds frequently, could stand or walk at least 2 hours out of an 8-hour workday, could sit with normal breaks for about 6 hours of an 8-hour workday, was limited to occasional pushing or pulling with his lower extremities, could occasionally climb a ramp or stairs, but could never climb a ladder, could frequently balance, could occasionally stoop, and could never kneel, crouch, or crawl. Tr. 227-234. Dr. Alley opined that Martin had no manipulative, visual, or communicative limitations, and should avoid concentrated exposure to wetness, humidity, noise, vibration, machinery, and heights. Tr. 227-234. Dr. Alley opined that Martin's hearing problems were not at a "listing" level, and that Martin's statements regarding his own limitations were "partially credible." Tr. 227-234. On the basis of Dr. Alley's assessment of Martin's physical RFC, the Administration found Martin not disabled by his morbid obesity and degenerative joint disease of the bilateral hips. Tr. 61. The Administration advised Martin of its decision that he was not disabled for purposes of the Act on December 21, 2009. Tr. 62, 65-68.

On December 29, 2009, reporting increased pain and more limited mobility since the autumn of 2009, Tr. 187-192, Martin requested reconsideration of the Administration's finding of non-disability, Tr. 69.

On February 24, 2010, on reconsideration of Martin's medical records, Administration consulting physician Sharon B. Eder, M.D., opined that Dr. Alley's assessment of Martin's

physical RFC should be "affirmed as written." Tr. 241. On February 25, 2010, in consequence, the Administration determined on reconsideration that Martin was not disabled by his conditions of morbid obesity and degenerative joint disease of the bilateral hips. Tr. 63. The Administration notified Martin of its decision on reconsideration on February 26, 2010. Tr. 64, 70-71.

On March 20, 2010, Martin requested a hearing before an Administrative Law Judge. Tr. 76-77. In connection with that request, Martin reported no changes in his condition since the increase in the severity of his symptoms that he had previously reported as having occurred in the autumn of 2009. Tr. 197-202. On April 7, 2011, Martin reported that he had received no medical treatment since the last medical records he had submitted in support of his DIB application. Tr. 207-209.

On April 14, 2011, Martin consulted for the first and apparently only time with a new treating physician, Thomas Hasbach, M.D. Tr. 247-249. Dr. Hasbach ordered and reviewed new X-ray studies of Martin's bilateral hips, interpreting those studies as follows:

> The degenerative changes seen at the left hip in 2009 have not significantly progressed, but are present in a similar fashion with in fact greater loss of joint space in the weightbearing area at the right hip. Marginal osteophytes and bony buildup at the femoral head-neck junction as well as at the acetabular margins, superiorly and inferiorly, are present bilaterally. Soft tissue shadows within the pelvis appear normal. No acute bony injuries are noted.

Tr. 251. Dr. Hasbach further opined that, by comparison with the X-ray studies of 2009, the new studies indicated "mild progression of his degenerative changes at both hips, which show altered femoral heads with increasing marginal osteophytes at the head/neck junction and some asymmetric narrowing of the joint space, particularly towards the superior lateral edge." Tr. 247-249. Dr. Hasbach further opined that:

Page 10 - OPINION AND ORDER

> [H]is clinical exam is consistent . . . with a short stride in his gait, a mild gluteus
> lurch to both sides walking . . . and it is presumed that when he would fatigue this
> would worsen. . . . He has very limited range of motion, although he can still don
> on and off his shoes on his own, he has gone to an elevated toilet seat. He only
> has about 45 degrees of external rotation of both hips, flexion is slightly less than
> 90 degrees at both hips and internal rotation is impossible, he cannot even get
> back to about 10 degrees of external rotation contracture and his abduction is also
> limited bilaterally with pain at the extremes of all motion.

Tr. 247-249. Dr. Hasbach recommended surgical intervention to bring about weight loss, and

total bilateral hip arthroplasties, opining that without hip replacement, "[he] th[ought] [Martin]

[wa]s facing a life in a motorized scooter sooner rather than later." Tr. 247-249.

On July 18, 2011, Dr. Hasbach filled out a form provided by Martin's counsel, indicating

that Martin's bilateral hip osteoarthritis and morbid obesity could be expected to last at least 12

months, that Martin suffered pain in the hips which altered his gait, did not require him to lie

down during the day or to elevate his legs, and would require him to miss two days of full-time

work per month if he were on a full-time work schedule. Tr. 253-256.

On August 1, 2011, a hearing was conducted before an ALJ in connection with Martin's

DIB application. Tr. 25-60. Appearing at the hearing were Martin and his counsel. Tr. 25-60.

No vocational expert was present. Tr. 25-60. At the hearing, Martin testified in relevant part

that he was unable to walk more than half a block before needing to stop for rest, Tr. 38, that to

navigate the five steps leading to the front porch of his home he needed to take them one step at a

time, and could do so no more than five times in one day, Tr. 40, that he could not stand and

walk for more than two hours of an eight-hour period, and for not more than one hour at a time,

Tr. 42, that Dr. Hasbach recommended he use crutches but that he has not complied with that

recommendation because he cannot afford to purchase crutches, Tr. 43, that he believed he could

perform part-time work but not full-time work, due to his pain symptoms and the effects of his

Page 11 - OPINION AND ORDER

medications, Tr. 43, that he typically spends about three-quarters of his waking hours in a recliner chair with armrests, Tr. 45-46, that approximately two days per week he is unable to leave his home due to the intensity of his pain symptoms, Tr. 48, and that his pain symptoms were aggravated by sitting, standing, walking, pushing, pulling and "almost anything," and were relieved only through medication, Tr. 58-59.

On August 19, 2011, the ALJ denied Martin's application for disability insurance benefits. Tr. 9-11, 12-19. Martin timely requested review of the ALJ's decision, Tr. 8, and the Appeals Council denied his request on October 24, 2012, Tr. 2-4. In consequence, the ALJ's decision of August 19, 2011, became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Martin did not engage in substantial gainful activity at any time following his claimed disability onset date of March 1, 2009, finding that Martin's earnings in 2009 and 2010 did not rise to the level of substantial gainful activity. Tr. 14. He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Martin's medical impairments of "degenerative joint disease of the bilateral hips and obesity" were "severe" for purposes of the Act. Tr. 14. The ALJ further found that Martin's "alleged hearing lost" caused no "medically determinable impairment," noting that there was no medical record suggesting any problem with Martin's hearing, and that Martin appeared able to hear and understand spoken language without

Page 12 - OPINION AND ORDER

difficulty. Tr. 15. Because the impairments caused by Martin's degenerative joint disease of the

bilateral hips and obesity were deemed severe, the ALJ properly proceeded to the third step of the

analysis.

At the third step, the ALJ found that none of Martin's impairments was the equivalent of

any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 25. The ALJ

therefore properly conducted an assessment of Martin's residual functional capacity.

Specifically, the ALJ found that at all material time:

> [Martin had] the residual functional capacity to lift and carry 10 pounds. He
> c[ould] stand or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-
> hour workday.

Tr. 15. In reaching this finding, the ALJ considered all of the material objective medical

evidence in the record, as well as Martin's own statements and those of his wife regarding his

symptoms. Tr. 15-18.

At the fourth step of the five-step process, the ALJ found that Martin was unable to

perform his past relevant work. Tr. 18.

At the fifth step, the ALJ found in light of Martin's age, education, work experience, and

RFC that there were jobs existing in significant numbers in the national and local economy that

he could perform. Tr. 18-19. Because the ALJ had determined that Martin could perform "all or

substantially all of the exertional demands of work at a given level of exertion," namely the "full

range of sedentary work," the ALJ found that pursuant to Medical-Vocational Rule 201.28, a

finding of "not disabled" was required without further consideration of Martin's limitations. Tr.

19. On that basis, the ALJ concluded that Martin was not disabled as defined in the Act at any

time between March 1, 2009, and August 19, 2011. Tr. 19.

## ANALYSIS

Martin challenges the Commissioner's assessment of his residual functional capacity. Specifically, Martin argues that the Administrative Law Judge improperly rejected the April 2011 and July 2011 opinions of treating physician Hasbach and improperly failed to credit Martin's own testimony regarding the severity of his symptoms. Martin further argues that, in light of the alleged errors in the ALJ's assessment of Martin's RFC, the Commissioner failed to carry her burden at the fifth step of the five-step process. I address each of Martin's arguments in turn.

**I.    Residual Functional Capacity**

**A.    Medical Opinion of Treating Physician Hasbach**

As noted above, Dr. Hasbach examined Martin on April 14, 2011, and compared X-ray radiographs of Martin's bilateral hips taken that same day with the X-ray radiograph of Martin's left hip taken on November 19, 2009. Hasbach opined that comparison of the two studies indicated "mild progression of [Martin's] degenerative changes at both hips, which show altered femoral heads with increasing marginal osteophytes at the head/neck junction and some asymmetric narrowing of the joint space, particularly towards the superior lateral edge." Tr. 247-249. Dr. Hasbach further opined that Martin had a short stride, that his gait was marked by a mild gluteus lurch to both sides, that Martin had a very limited range of motion, and that Martin's pain symptoms altered his gait but did not require him to lie down during the day or to elevate his legs. Tr. 247-249, 253-256. Dr. Hasbach further opined that Martin's pain symptoms would require him to miss two days of full-time work per month if he were on a full-time work schedule, but did not explain the medical basis for the purportedly necessary absences from work. Tr. 253-256. Martin argues that the Administrative Law Judge improperly rejected Dr.

Page 14 - OPINION AND ORDER

Hasbach's medical opinion that without hip replacement, "[he] th[ought] [Martin] [wa]s facing a life in a motorized scooter sooner rather than later," that Martin's pain symptoms altered his gait, giving him a short stride and a gluteal lurch that would presumably worsen with fatigue, that Martin had a limited range of motion in his hips, and that Martin's impairments would require him to miss two days of full-time work per month if he were on a full-time work schedule.  Tr. 247-249, 253-256.

An ALJ may properly reject a treating physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ found in relevant part as follows:

As for the claimant's hip impairment, medical records show that he was diagnosed with osteoarthritis of the hips . . . .  Medical records are very limited, and show little treatment for his hip condition.  There is no evidence of physical therapy or injections.  An X-ray noted that the claimant had mild progression of his degenerative changes at both hips, with altered femoral heads with increasing marginal osteophytes at the head-neck junction and some asymmetric narrowing of the joint space, particularly towards the superior lateral edge . . . .  The claimant's clinical exam was consistent with the short stride in his gait, and it was noted that the claimant had a limited range of motion . . . .

* * *

. . .Dr. Hasbach stated that the claimant was "facing a life in a motorized scooter sooner rather than later" but he did not state that the claimant was unable to

ambulate effectively currently . . . .

* * *

> The claimant's treating physician, Thomas Hasbach, MD . . . opined that the
> claimant had osteoarthritis of the bilateral hips and morbid obesity, and that he
> would miss 2 days of work per month. . . .  Dr. Hasbach did not explain why he
> believed the claimant would miss 2 days per month, and he did not attach any
> objective medical evidence to support his opinion.  Dr. Hasbach also did not opine
> any functional limitations, but he noted that the claimant did not need to lie down
> or rest periodically during the day, and he had no side effects from his medication
> . . . .  Dr. Hasbach basically found no limitations, but opined that the claimant
> would miss 2 days of work per month.  Because Dr. Hasbach did not explain his
> opinion or attach any objective medical evidence, his opinion is given little
> weight.

Tr. 16-18.  As to Dr. Hasbach's opinion regarding Martin's altered gait and limited range of

motion in his hips, it therefore appears that the ALJ fully credited that portion of Dr. Hasbach's

opinion, and correctly noted that the opinion did not suggest any functional limitations

inconsistent with Martin's physical residual functional capacity as described in the ALJ's

findings.  Similarly, as to Dr. Hasbach's opinion that, absent weight loss and hip replacement

surgery, Martin would require a motorized scooter to move around "sooner rather than later," the

ALJ did not reject the opinion but correctly noted that it was without bearing on Martin's current

physical limitations.

By contrast, the ALJ did in fact reject Dr. Hasbach's opinion that Martin's impairments

would require him to miss two days of full-time work per month if he were on a full-time work

schedule.  It is well established that "an ALJ may discredit treating physicians' opinions that are

conclusory, brief, and unsupported by . . . objective medical findings." *Batson v. Comm'r of the

SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004), *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

Cir. 2001), *citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also, e.g., Morgan*

Page 16 - OPINION AND ORDER

*v. Commissioner of the SSA*, 169 F.3d 595, 601 (9th Cir. 1999). The ALJ correctly observed that

nothing in Dr. Hasbach's notes or records suggests any medical basis for his opinion that Martin

would be required to miss two days of full-time work per month if on a full-time work schedule.[3]

In consequence, the ALJ did not err in rejecting that portion of Dr. Hasbach's opinion, without

regard to whether the opinion was consistent or inconsistent with other medical evidence of

record.

      In the alternative, Martin argues that the ALJ erred by failing to further develop the

record, suggesting that if Dr. Hasbach's opinion is insufficient to mandate award of benefits, it is

insufficient only to the extent that it is incomplete. "In Social Security cases the ALJ has a

special duty to fully and fairly develop the record and to assure that the claimant's interests are

considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996), *quoting Brown v. Heckler*,

713 F.2d 441, 443 (9th Cir. 1983). "This duty exists even when the claimant is represented by

counsel." *Id.*, *citing Brown*, 713 F.2d at 443. However, the "ALJ's duty to develop the record

further is triggered only when there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th

Cir. 2001), *citing Tonapetyan*, 242 F.3d at 1150. Where the medical record before the ALJ is

"neither ambiguous nor inadequate to allow for proper evaluation of the evidence," the ALJ does

not err by failing to solicit additional medical evidence beyond that offered into the record by the

---

    [3] Although as noted above Martin testified at the hearing before the ALJ that he is unable to leave his house approximately two days per week due to the intensity of his pain symptoms, there is no suggestion in Dr. Hasbach's records that he relied on any such report in issuing his opinion. Moreover, Martin's lay opinion would not constitute an objective medical finding, and as discussed below, the ALJ in any event adduced specific and legitimate reasons for discounting Martin's credibility to the extent his testimony was inconsistent with the physical residual functional capacity described in the ALJ's findings.

Page 17 - OPINION AND ORDER

claimant and/or the claimant's counsel. *Id.* Contrary to Martin's implicit contentions, the medical record at issue here, while not extensive, is neither ambiguous nor inadequate to allow for proper evaluation. In particular, Dr. Hasbach did not fail to opine as to the functional limitations caused by Martin's osteoarthritis of the bilateral hips, but rather provided a detailed medical opinion that Martin's bilateral hip osteoarthritis and morbid obesity altered his gait in specified ways and limited his range of motion in a precisely quantified manner with resulting specified postural limitations, and further expressly opined that Martin's conditions did not require him to lie down during the day or to elevate his legs when seated. Dr. Hasbach's opinion is unambiguous and sufficient to permit appropriate evaluation of the impact of Martin's symptoms on his residual functional capacity. In consequence, the ALJ was under no duty to further develop the medical record.

Because the ALJ did not err in his findings regarding Dr. Hasbach's medical opinion, Martin's assignments of error in connection with that opinion provide no grounds for disturbing the Commissioner's final decision.

## B.    Martin's Lay Opinion Testimony

As noted above, in connection with his disability insurance benefits application Martin characterized the impairments caused by his hip pain as follows:

> Arthritis in my hips limits my ability to walk without pain. Sitting for more than an hour in most cases causes pain as well, bending and stooping are at times almost impossible. Medications help but do not take all the pain away.
>
> * * *
>
> Sitting is painful[], [s]tanding is painful, walking is painful, [l]ifting the proper way without using my back is impossible because my hips can[']t move properly to do the lifting, unable to hear instructions at times unable to hear some people because the the [sic] tones of their voice. It is painful to walk, sit, bend, lift, even

Page 18 - OPINION AND ORDER

basic relaxation is uncomfortable.

Tr. 136-143. Martin reported that he was unable to bend or squat, that he sometimes needed his

children's help to put on his socks and shoes, and that he was usually able to walk less than a

quarter of a mile before needing to rest. Tr. 165-172. Martin characterized the pain caused by

his arthritis as "aching to piercing" and as present when he walked, stood, sat, or bent. Tr. 173.

At the hearing before the ALJ, Martin testified that he was unable to walk more than half a block

before needing to stop for rest, Tr. 38, that to navigate the five steps leading to the front porch of

his home he needed to take them one step at a time, and could do so no more than five times in

one day, Tr. 40, that he could not stand and walk for more than two hours of an eight-hour

period, and for not more than one hour at a time, Tr. 42, that Dr. Hasbach recommended he use

crutches but that he has not complied with that recommendation because he cannot afford to

purchase crutches, Tr. 43, that he believed he could perform part-time work but not full-time

work, due to his pain symptoms and the effects of his medications, Tr. 43, that he typically

spends about three-quarters of his waking hours in a recliner chair with armrests, Tr. 45-46, that

approximately two days per week he is unable to leave his home due to the intensity of his pain

symptoms, Tr. 48, and that his pain symptoms were aggravated by sitting, standing, walking,

pushing, pulling and "almost anything" he does, and were relieved only through medication, Tr.

58-59. Martin argues that the Administrative Law Judge improperly failed to credit his

testimony that he is unable to endure the rigors of full-time employment and that approximately

two days per week he is unable to leave his home due to the intensity of his pain symptoms.

When a claimant's medical record establishes the presence of a "medically determinable

impairment" that "could reasonably be expected to produce the [claimant's alleged] pain or other

Page 19 - OPINION AND ORDER

symptoms," the ALJ must evaluate the claimant's credibility in describing the extent of those symptoms. 20 C.F.R. § 404.1529. In the event the ALJ determines that the claimant's report is not credible, such determination must be made "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*).

In weighing a claimant's credibility, the ALJ may consider, *inter alia*, the "claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between h[is] testimony and h[is] conduct, claimant's daily activities, h[is] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Id.* (internal modifications omitted), *citing Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). While a finding that a claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of his pain, *see Light*, 119 F.3d at 792, *citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), where the ALJ's credibility finding is supported by substantial evidence in the record, the finding will not be disturbed, *Thomas*, 278 F.3d at 959, *citing Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ found Martin's testimony regarding his impairments partly credible, discussing Martin's testimony and credibility as follows:

> The claimant alleged that he is unable to work, due to arthritis in his hips . . . . He alleged that his arthritis limited his ability to walk without pain, sitting for more than an hour in most cases caused pain, and at times he was unable to bend or stoop . . . . He alleged that medications helped, but did not take away all the pain . . . . He later alleged that he has increased pain and more limited mobility . . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

* * *

At the hearing, the claimant testified that he was not able to walk a full block before resting, and he had been unable to do so since March 2009. However, this testimony is inconsistent with a statement he submitted in November 2009, in which he stated that he could walk usually less than a quarter of a mile . . . . The claimant alleged that his children sometimes had to help him put on his socks and shoes, but his own doctor recently noted that the claimant was still able to don and doff his shoes . . . . . . . At the hearing, the claimant testified that he thought he could work part-time but not full-time, and he could stand or walk for 2 hours in an 8-hour workday, but only for one hour at a time. The claimant testified that when he sits he needs arm rests, and he spends his days sitting in a recliner with his feet parallel to his hips. However, when Dr. Hasbach completed the medical evaluation form, he answered the question of how often would the claimant need to elevate his legs in an 8-hour workday by noting this question was "not relevant to his hip arthritis" . . . . This indicates that he did not believe it was necessary for the claimant to sit with his legs elevated.

The claimant's credibility is undermined by his work after the alleged onset date, and his receipt of unemployment benefits. The claimant testified that he worked from the alleged onset date in March 2009, through February 2011. As discussed above, the claimant did not perform work at substantial gainful activity levels, but he did earn significant wages. Although the claimant alleged he was disabled in March 2009, records show he earned $7,509.79 in 2009, and his wages went up to $8,008.99 in 2010 . . . . The claimant also claimed unemployment benefits in 2009 and 2010 . . . . Generally, in order to collect unemployment benefits, the recipient must certify that [he is] ready, willing and able to work. This is not consistent with the claimant's allegations of total disability.

* * *

. . . The opinions of Dr. Alley and Dr. Eder [regarding Martin's functional limitations] are consistent with the medical records, which show that [Martin] does have some limitations because of his bilateral hip impairment and obesity, but that he has had very little treatment for this condition. However, the claimant testified that he is more limited tha[n] Dr. Alley and Dr. Eder have opined, and he is given the benefit of the doubt that he is unable to stand or walk for 6 hours in an 8-hour workday, due to his hip impairment. Therefore, the opinions of Dr. Alley and Dr. Eder are given limited weight.

Page 21 - OPINION AND ORDER

Tr. 16-17.  Thus, the ALJ did not merely fully credit Martin's testimony that his medical condition caused him to experience frequent pain symptoms, but indeed credited Martin's testimony regarding the limitations on his ability to stand or walk for extended period of time to the point of relying on it to reject a portion of the medical opinion offered by consulting physicians Alley and Eder.  It is therefore only the ALJ's determination that Martin was not credible in characterizing his pain symptoms as so debilitating as to prevent him from performing full-time work and as to prevent him from leaving his house on approximately two days a week that is at issue here.

The ALJ provided specific and legitimate reasons for discrediting Martin's testimony to that extent.  First, the ALJ correctly noted that Martin provided inconsistent characterizations of the limitations caused by his medical conditions.  In October 2009, Martin advised the Administration that he could "usually" walk less than a quarter mile before needing to stop and rest, with the implication that sometimes he was capable of walking a quarter mile or further without a rest break, Tr. 170, whereas at the hearing of August 2011 he reported that he was unable to walk further than half a city block before he needed to rest, Tr. 37-38.  Although Martin characterizes his two statements as "consistent," in that half a block is in fact less than a quarter mile, Martin's characterization fails to take into account his use of the modifier "usually" in the first statement, which if given its ordinary meaning renders the two statements irreconcilable.[4]  The ALJ did not err in interpreting Martin's statements in that manner, and even

---

[4] The ALJ also found it inconsistent that Martin testified at the hearing that "sometimes" his children had to help him put on or remove his shoes, notwithstanding Dr. Hasbach's report that he was still able to perform this function himself without assistance.  I agree with Martin that, because he testified only that "sometimes" he required such assistance, the apparent inconsistency of the two statements does not provide legitimate grounds for discounting his

if Martin's statements were subject to an alternative interpretation which did not undermine his credibility, this court is not authorized to substitute its judgment of Martin's credibility for the ALJ's, or to reject the ALJ's finding simply because it is premised on evidence subject to more than one reasonable interpretation. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Second, the ALJ found Martin's testimony regarding his inability to sustain full-time work inconsistent with the evidence of Martin's employment as a gas-station attendant for a period of nearly two years following his alleged disability onset date. Performance of job duties on a part-time basis, while not sufficient to establish capacity to work full time, can constitute a legitimate reason for discounting a claimant's assertion of disability. *See, e.g., Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). The ALJ did not err in finding that Martin's work experience undermined the credibility of his assertion of inability to work full time.

Third, the ALJ found some of Martin's testimony regarding his functional limitations to be inconsistent with some of the medical evidence and medical opinions of record. Specifically, the ALJ found Martin's testimony at the August 2011 hearing that he needed to sit in a reclining chair with his feet elevated for six hours of a given eight-hour period to be inconsistent with Dr. Hasbach's opinion that he did not need to raise his feet when sitting and that elevation of his feet was "irrelevant" to his hip arthritis. The ALJ did not err in finding that the conflict between Martin's testimony and Dr. Hasbach's opinion undermined Martin's credibility in some degree.

While the proffered reasons discussed above are not sufficient to establish conclusively that Martin had a propensity to exaggerate his symptoms, they do constitute specific and

---

credibility.

legitimate reasons supported by evidence in the record that are sufficient to permit the conclusion that the ALJ did not arbitrarily reject Martin's testimony. Indeed, the record establishes that the ALJ afforded Martin's testimony significant weight, and discredited it only in part, based on legitimate concerns arising out of evidence in the record. Because the ALJ's credibility determination is supported by substantial evidence in the record and was made pursuant to proper legal standards, this court will not disturb his credibility findings.

## II.    Step Five:  Existence of Jobs the Claimant Could Perform in the National Economy

As discussed above, Martin argues that the Administrative Law Judge erred in his assessment of Martin's residual functional capacity. On that basis, Martin argues that the Commissioner failed to meet her burden at the fifth step of the five-step process to demonstrate that, in light of his residual functional capacity, Martin was capable of performing jobs existing in significant numbers in the national economy. Specifically, Martin argues that because of the ALJ's purported errors in rejecting Dr. Hasbach's opinion and in discounting Martin's lay opinion testimony, the Commissioner was not entitled to rely on Medical-Vocational Rule 201.08 in lieu of consulting a vocational expert to determine whether Martin was capable of performing such jobs. However, as discussed above, the ALJ did not err in his assessment of Martin's RFC. In consequence, the Commissioner was entitled to rely on Medical-Vocational Rule 201.08 for that

/ / /

/ / /

/ / /

/ / /

/ / /

purpose.  *See* 20 C.F.R. pt. 404, subpt P, app. 2.  It follows that the Commissioner met her

burden at the fifth step of the five-step sequential process.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Martin's

application for disability insurance benefits is affirmed.  A final judgment shall be prepared.

Dated this 18th day of June, 2014.

Honorable Paul Papak
United States Magistrate Judge

Page 25 - OPINION AND ORDER